# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3606

_____

United States of America

*Plaintiff - Appellee*

v.

Lori Ann Wisecarver

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 15, 2018
Filed: December 20, 2018

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Lori Ann Wisecarver pled guilty to second-degree murder in violation of 18 U.S.C. §§ 1111(a) and 1153. The district court[1] granted the government's request for an upward departure or an upward variance, sentencing Wisecarver to 480 months

_____

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

imprisonment. She appeals, alleging her sentence is substantively unreasonable. Having jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

In 2014, Wisecarver and her husband received custody of J.L., then about two years old, based on a distant family relationship. J.L. and his siblings had been removed from their mother's custody due to her drug abuse. In the months that followed, Wisecarver physically abused J.L., motivated largely by frustration over toilet-training issues. Wisecarver's physical abuse of J.L. culminated on February 24, 2015 when an ambulance brought the boy to the Pine Ridge Indian Health Services Hospital. J.L. was pronounced dead shortly after arrival. The boy's autopsy revealed that he had been abused for some time; he was covered in old and new injuries, including bruises, burn-like injuries to his face, and injuries to his genitals. He died from multiple blunt trauma injury, including catastrophic injuries to the head and abdomen. When interviewed about J.L.'s death, Wisecarver initially denied killing the child, claiming he had fallen due to a seizure. The subsequent investigation contradicted this claim. Several individuals, including J.L.'s pediatrician, denied that the child had seizures, and witnesses familiar with the family reported seeing Wisecarver hit J.L.'s head against a concrete floor, duct tape the child to a toilet, rub the child's face in urine, and put the child in a washing machine. In September 2015, the government charged Wisecarver and her husband with first-degree murder and several counts of child abuse. To avoid a mandatory life sentence, Wisecarver pled guilty to second-degree murder and signed a statement admitting to repeated physical abuse of J.L. that resulted in his death.

Wisecarver's presentence investigation report (PSR) generated a United States Sentencing Guidelines range of 210-262 months imprisonment due, in part, to Wisecarver's lack of criminal history. At sentencing, the government sought an upward departure or upward variance to 480 months, contending that the PSR's calculation of the appropriate Guidelines range failed to consider the "exceptionally heinous, cruel, brutal, or degrading" nature of the crime and the original dismissed

charges. United States Sentencing Commission, Guidelines Manual, §§ 2A1.2, comment. (n.1) (stating "an upward departure may be warranted" in second degree murder cases involving heinous conduct), 5K2.8 (noting a court may depart upward to reflect the "unusually heinous" nature of the offense conduct), 5K2.21 (stating a "court may depart upward to reflect the actual seriousness of the offense based on conduct . . . dismissed as part of a plea agreement . . . ."). The district court granted both the upward departure and the upward variance. It cited U.S.S.G. § 5K2.0—the Guidelines' policy statement for grounds for departure, including aggravating or mitigating circumstances—as additional support for its decision. The district court found that both the Guidelines' departure provisions and the 18 U.S.C. § 3553(a) variance factors led the court to impose the same above-guidelines sentence of 40 years imprisonment. Wisecarver now challenges the district court's upward variance and upward departure. She contends that her sentence is substantively unreasonable, arguing it is disparately long compared to the sentences imposed on similar defendants.

We review the substantive reasonableness of a sentence using "a deferential abuse of discretion standard," considering "the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall v. United States, 552 U.S. 38, 41, 51 (2007). A district court abuses its discretion when it fails to give significant weight to a relevant factor; "gives significant weight to an improper or irrelevant factor;" or considers the proper factors but "commits a clear error of judgment" in weighing them. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks omitted). It is "the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Id. at 464 (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

One of the seven § 3553(a) factors requires that the court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who

-3-

have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, it is not necessarily an abuse of discretion to impose an above-range sentence, including the statutory maximum, in "extraordinary" cases in which there are "aggravating circumstances . . . not adequately taken into account by a shorter term of imprisonment." United States v. Lovato, 868 F.3d 681, 684 (8th Cir. 2017) (affirming a sentence that was virtually quadruple the recommended Guidelines range when the defendant regularly sexually abused a minor over the course of eight and a half years). When a disparity arises between a defendant's sentence and the sentences given in other similar cases, this difference must be weighed against the other six factors. United States v. Soliz, 857 F.3d 781, 783 (8th Cir. 2017), cert. denied, 138 S. Ct. 567 (2017). Furthermore, a "district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009).

Wisecarver argues that her sentence is disproportionately severe compared to the sentences given in other cases involving the deaths of children. She therefore contends that outrage, rather than proper balancing of the § 3553(a) factors, primarily drove the district court's analysis. However, the district court was explicit in its reasoning. It emphasized that it "thought about [the sentence] long and hard," Sent. Tr. 30, Dist. Ct. Dkt. 157, and stressed that Wisecarver's case was unusual compared to other child death cases because J.L.'s autopsy demonstrated that he "sustained repeated and over a period of time really brutal and heinous and cruel injuries which finally resulted in the child's death." Sent. Tr. 31. The court described its struggle to find comparable cases involving such severe and sustained child abuse; it stated it had seen only one other case that "would even come close to being more horrific than this homicide of an infant." Sent. Tr. 33. All of the cases cited by Wisecarver are distinguishable from her own, involving neglect rather than violent abuse, single

-4-

incidents rather than prolonged mistreatment, or multiple abusers rather than one.[2] In addition to clearly considering potential sentence disparity, the district court expressly weighed other statutory considerations justifying the sentence imposed including the seriousness of the offense, Wisecarver's need for treatment, the interest in deterring similar criminal conduct, and the need to protect the public from further crimes. See 18 U.S.C. § 3553(a)(2). While the district court clearly "assign[ed] . . . greater weight" to the seriousness of the offense than it did to other factors, under § 3553(a), it had "wide latitude" to do so. See United States v. Maxwell, 664 F.3d 240, 247 (8th Cir. 2011) (quoting Bridges, 569 F.3d at 379). Therefore, the court did not abuse its discretion in granting an upward variance.

Finally, Wisecarver fails to allege any specific error in the district court's application of the Guidelines' departure provisions. Instead, she broadly contends that its use of the departure provisions resulted in a substantively unreasonable sentence. Rather than identifying a sole source for its enhanced sentence, the district court framed a Guidelines departure based on "heinous" conduct and a variance based on the § 3553(a) factors as alternative bases for arriving at the same 40-year sentence. In such instances, if "the district court did not abuse its substantial discretion in varying upward . . . , any error in alternatively imposing an upward departure [is] harmless because 'the district court would have imposed the same sentence absent the error.'" United States v. Grandon, 714 F.3d 1093, 1098 (8th Cir. 2013) (quoting United States v. Idriss, 436 F.3d 946, 951 (8th Cir. 2006)). Therefore, because the district court did not abuse its discretion in varying upward, we necessarily find no reversible error in the district court's reference to the departure provisions, and we need not discuss the district court's departure analysis.

---

[2]Though the government also charged Wisecarver's husband with J.L.'s death, it is undisputed that he was away from the home at the time Wisecarver fatally harmed J.L. and that Wisecarver was the primary abuser of the child.

Because the district court did not abuse its discretion in imposing Wisecarver's sentence, we affirm.

_____